## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| LDR INDUSTRIES, LLC, | Case No. 14-32138 |
| Debtor. | Honorable Pamela S. Hollis |

## NOTICE OF EMERGENCY MOTION

To:     See attached Service List

PLEASE TAKE NOTICE that on **September 4, 2014**, at **11:30 a.m.**, the undersigned shall appear before the Honorable Pamela S. Hollis, or any Judge sitting in her stead, in courtroom 644, 219 S. Dearborn Street, Chicago, Illinois and shall then and there present the **EMERGENCY MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO (1) OBTAIN POST-PETITION FINANCING, (2) USE CASH COLLATERAL AND OTHER COLLATERAL AND (3) PROVIDE ADEQUATE PROTECTION, PURSUANT TO SECTIONS 361, 363 AND 364 OF THE BANKRUPTCY CODE**, a copy of which is attached hereto and herewith served upon you, and shall then and there pray for the entry of an Order in conformity with the prayer of said pleadings.

Dated:  September 3, 2014

Respectfully submitted:

LDR INDUSTRIES, LLC.

By: _____/s/Stephen T. Bobo_____
          One of its proposed attorneys

Stephen T. Bobo (IL Bar No. 6182054)
Aaron B. Chapin (IL Bar No. 6292540)
**REED SMITH LLP**
10 S. Wacker Drive, 40th Floor
Chicago, IL  60606
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400
sbobo@reedsmith.com
achapin@reedsmith.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| LDR INDUSTRIES, LLC, | Case No. 14- 32138 |
| Debtor. | Honorable Pamela S. Hollis |

### EMERGENCY MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO (1) OBTAIN POST-PETITION FINANCING, (2) USE CASH COLLATERAL AND OTHER COLLATERAL AND (3) PROVIDE ADEQUATE PROTECTION, PURSUANT TO SECTIONS 361, 363 AND 364 OF THE BANKRUPTCY CODE

LDR Industries, LLC (the "Debtor"), an Illinois limited liability company, debtor and debtor in possession, by and through its undersigned counsel, hereby moves the Court pursuant to 11 U.S.C. §§ 361, 362, 363, and 364(c), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-2 of the Local Rules of for the United States Bankruptcy Court for the Northern District of Illinois, for entry of an order substantially similar to the proposed order (the "Cash Collateral and DIP Financing Order"), attached hereto as "Exhibit A," authorizing the Debtor to (i) obtain interim and final post-petition financing from Debtor's pre-petition secured lender, JP Morgan Chase Bank, N.A. ("JPMC"), secured by assets of the estate, (ii) use cash collateral on an interim basis and, after a final hearing, on a final basis in order to continue operating the Debtor's business as a going concern and thereby maintain and preserve the Debtor's assets, and (ii) provide adequate protection to JPMC (the "Motion").  In support of the Motion, the Debtor respectfully states as follows:

### REQUIRED DISCLOSURES

**A.      Rule 4001(b) Disclosures:**

(1)(B)(i)      The only entity that potentially has an interest in the cash collateral is ("JPMC").

(1)(B)(ii)      The Debtor requires debtor in possession ("DIP") financing and the use of the cash collateral in order to continue its business operations and to maintain and preserve the going concern value of its assets pending a sale.  The Debtor requests authority to obtain DIP financing and use cash collateral to pay ongoing expenses incurred in the ordinary course of its business and associated with the maintenance and preservation of the Debtor's assets.  These expenses include, without limitation, payroll, employee-related expenses, inventory purchases, shipping costs, supplies, lease expenses, taxes, insurance, and professional fees.

(1)(B)(iii)      The material terms of the Debtor's use of cash collateral are the same as set forth in the Debtor's pre-petition debt facility with JPMC.  The Debtor requests authority to use cash collateral for an initial duration not to exceed 25 days, but through the duration of the Chapter 11 Case, upon entry of a final order.

(1)(B)(iv)      The Debtor requests authority to grant certain adequate protection to JPMC on account of its pre-petition liens and security interests in the form of (1) replacement liens and (2) current payment of interest accrued on the pre-petition indebtedness.

**B.      Rule 4001(c) Disclosures:**

(1)(B)(i) The credit agreement does grant priority or a lien on property of the estate under §364(c) or (d).  (*See* Section 2.19(b)).

(1)(B)(ii) The credit agreement does provide for adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under §364 to make cash payments on account of the claim.  (*See* Section 2.19(b)).

(1)(B)(iii) The credit agreement does determine the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim through stipulations of the Debtor that are not binding on creditors for a defined period of time.  (*See* Section 2.19(c)).

(1)(B)(iv) The credit agreement does not provide a waiver or modification of Code provisions or applicable rules relating to the automatic stay.

(1)(B)(v) The credit agreement does not provide a waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364.

(1)(B)(vi) The credit agreement does not establish deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order.

(1)(B)(vii) The credit agreement does not provide a waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien.

(1)(B)(viii) The credit agreement does provide a release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action.  (*See* Section 2.19(d)).

(1)(B)(ix) The credit agreement does not provide for the indemnification of JPMC.

(1)(B)(x) The credit agreement does not include a release, waiver, or limitation of any right under § 506(c).

(1)(B)(xi) The credit agreement does not provide the granting of a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a).

C.   **Local Rule 4001-2(A) Disclosures:**

(2)(a)  The Cash Collateral and DIP Financing Order does not contain any provisions that grant cross-collateralization protection (other than adequate protection) to JPMC.

(2)(b)  The Cash Collateral and DIP Financing Order does contain findings of fact that bind the estate with respect to the validity, perfection or amount of the JPMC's pre-petition liens or debts or the waiver of claims against JPMC.  The Cash Collateral and DIP Financing Order also contains findings of fact that the Debtor is unaware of any factual basis for the avoidance or subordination of JPMC's pre-petition liens.  (*See* Cash Collateral and DIP Financing Order, at pages 3-5).  However, the Cash Collateral and DIP Financing Order gives (i) the creditors' committee, if formed, sixty (60) days from the date of its formation, or (ii) parties in interest, if no committee is formed, seventy-five (75) days from entry of the Cash Collateral and DIP Financing Order, to investigate and object to such matters.

(2)(c)  The Cash Collateral and DIP Financing Order does not waive any rights the estate may have under 11 U.S.C. § 506(c).

(2)(d)  The Cash Collateral and DIP Financing Order does not grant to JPMC any liens on the Debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 or 549.

(2)(e)  The Cash Collateral and DIP Financing Order does not deem JPMC's respective pre-petition secured debt to be post-petition debt or use post-petition loans from the Lenders to pay part or all of their respective pre-petition debt, other than as provided in 11 U.S.C. § 552(b).

(2)(f)  The Cash Collateral and DIP Financing Order does not provide for different treatment of professionals relative to one another or limit a committee counsel's use of a professional fee carve-out.

(2)(g)   The Cash Collateral and DIP Financing Order does not prime any secured lien. The priority of prior liens is preserved to the extent that they are valid and enforceable.

(2)(h)   The Cash Collateral and DIP Financing Order does not contain a declaration that it does not impose lender liability on any secured creditor, including JPMC.

(2)(i)   The Cash Collateral and DIP Financing Order does not grant JPMC expedited relief from the automatic stay, nor relief from the automatic stay without further order of the Court.

(3).      Summary of other essential provisions of the Cash Collateral and DIP Financing Order:

   (i) the interim borrowing limit: $1,250,000;

   (ii) borrowing conditions: availability under the borrowing base and in accordance with the approved budget;

   (iii) interest rate: the Chase Bank Floating Rate plus 100 basis points;

   (iv) maturity: December 31, 2014;

   (v) events of default: (a) failure to enter Final Order within 25 days following entry of the Interim Order; (b) dismissal or conversion of the case to a case under Chapter 7 of the Bankruptcy Code; (c) appointment or a trustee under Section 1104 of the Bankruptcy Code or an examiner with expanded powers; (d) entry of an order amending, supplementing, staying, revoking, reversing or otherwise modifying the DIP Facility, or the Interim or Final Order, or the DIP Loan Credit; (e) entry of an order permitting any claim against, or obligation of the Debtor having priority equal to or superior to the priority of JPMC in respect of either the Prepetition Indebtedness or the Postpetition Debt; (f) any attempt by the Debtor or any other Loan Party to invalidate, reduce or otherwise impair any of JPMC's rights, claim or liens under the DIP Facility, the DIP Credit Agreement and the Interim Order or the Final Order, or any such rights, claims or liens shall, for any reason cease to be valid; (g) breach of any obligation of the Debtor set forth in the DIP Credit Agreement or the Interim or Final Orders; and (h) the failure to satisfy any of the Sale Benchmarks.

   (vi) use of funds limitations: to be used consistent with the approved budget;

   (vii) protections afforded under §§ 363 and 364 of the Bankruptcy Code: superpriority status, and first priority liens on the Debtor's post-petition assets, subject to certain carve-outs and exceptions.

(4)      The required budget is attached to the Cash Collateral and DIP Financing Order.

## I.    JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are 11 U.S.C. §§ 361, 362, 363, and 364, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-2 of the Local Rules of for the United States Bankruptcy Court for the Northern District of Illinois.

## II.    BACKGROUND

### A.    The Chapter 11 Case.

2.    On September 2, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Code").  Since the Petition Date, the Debtor has remained in possession of its assets and has continued to operate its business as a debtor in possession in accordance with 11 U.S.C. § § 1107 and 1108 in the above-captioned case (the "Chapter 11 Case").

3.    No trustee or examiner has been appointed in the Chapter 11 Case.

4.    The nature of the Debtor's business and the factual background relating to the Debtor's commencement of this Chapter 11 Case is set forth in detail in the Declaration of William Underwood in Support of Chapter 11 Petition and First-Day Motions (Docket No. 12) filed on September 3, 2014 and incorporated herein by reference.

5.    The Debtor is an importer, distributor and wholesaler of plumbing fixtures and supplies.  The Debtor buys products from both foreign and U.S. companies and distributes to retail stores such as Home Depot and Sears.

6.    For most of its existence, the Debtor has been a profitable company.  Although sales volume has softened in recent years, with annual net sales falling from $73.6 million in

2010 to $65 million in 2013, the company has maintained its operating margins at a consistent level.

7.      The Debtor relies on bank financing for its working capital and maintains a revolving line of credit and other credit relationships with JPMC.  The outstanding obligations to JPMC are secured by a senior lien upon substantially all of the Debtor's assets.

8.      On or about June 26, 2013, the Debtor and its affiliates entered into a Credit Agreement with JPMC (the "Prepetition Indebtedness").  This Credit Agreement provides for a revolving line of credit facility of up to $20 million, subject to a borrowing base.  It also includes a term loan in the amount of $2,600,000 in connection with the building occupied by the Debtor. Letters of credit issued to secure surety bonds required by U.S. Customs and Border Protection are part of the revolving line of credit facility.

9.      The other parties to the Credit Agreement are 600 N. Kilbourn, L.L.C., which mortgaged its real estate to secure the Prepetition Indebtedness, and affiliates GB Holdings, Inc. and LDR International, Inc., which have guaranteed the obligations to JPMC.  600 N. Kilbourn, L.L.C., GB Holdings, Inc., and LDR International, Inc. have granted security interests in their respective assets to secure the Prepetition Indebtedness.   There is also a separate pledge agreement granting JPMC a security interest in the membership interests of 600 N. Kilbourn L.L.C. to secure the Prepetition Indebtedness.  The proceeds from the Prepetition Indebtedness were used to repay a secured prior loan from JPMC having a similar structure.

10.     Accrued interest on each loan is payable in arrears.  The maturity date of the Prepetition Indebtedness is June 24, 2016, and it may be prepaid before then.

11.     Pursuant to the term of the Credit Agreement, all of the Debtor's account debtors pay into a lockbox, which until the Petition Date JPMC swept daily into a Collection Account and applied those amounts to reduce the revolving loan.

12.     The security interests that the Debtor granted to JPMC to secure the Prepetition Indebtedness (the "Prepetition Security Interests") cover substantially all of the Debtor's assets and property (the "Prepetition Collateral"), which include "cash collateral" as defined in Section 363(a) of the Code (the "Cash Collateral").

**B.      The Pre-Petition Cash Collateral.**

13.     The Debtor's Prepetition Indebtedness to JPMC is approximately $18.5 million as of the Petition Date.

14.     JPMC's Prepetition Security Interests cover the Debtor's assets and property, which would include any "cash collateral" as that term is defined in Section 363(a) of the Code. No other creditor has a lien on the Debtor's assets.

15.     The Debtor continues to serve its customers, but the Debtor's operations would be severely disrupted if its use of Cash Collateral were to be abruptly discontinued.  In that event, it would be unable to pay operating expenses and unable to operate its business in an orderly manner, thereby severely impairing its ability to operate as a going concern, collect its accounts receivable, market and sell its inventory and maximize the value of its other assets in a sale.

16.     In addition, the operation of the Debtor's business routinely experiences timing lags between its needs for cash to make payroll and to pay other ordinary expenses in a timely fashion and the collection of accounts receivable.  To provide the Debtor with a cushion to absorb such short term cash needs, the Debtor has negotiated with JPMC to obtain a Senior Secured Super-Priority Debtor in Possession Credit Agreement (the "DIP Loan") substantially in

the form attached hereto as Exhibit B.  The DIP Loan is in the principal amount of $2 million

that the Debtor will be able to draw upon to meet short term cash needs.

17.     The DIP Loan will be repaid when the Debtor collects additional receivables.  The

DIP Loan will be secured by the same types of collateral that currently secures the Pre-Petition

Indebtedness and will be subject to availability based on a borrowing base and pursuant to an

approved budget.

18.     The Debtor and its estate will suffer immediate and irreparable harm unless it is

immediately authorized to use Cash Collateral and to borrow up to $1.25 million under the DIP

Loan on an interim basis pursuant to the terms and conditions set forth in the proposed Cash

Collateral and DIP Financing Order. This new borrowing under the DIP Loan is projected to be

repaid in following weeks as the Debtor collects more of its accounts receivable.

19.     Respective business representatives and counsel for JPMC and the Debtor

conducted lengthy, good faith negotiations with respect to the terms and conditions of the Cash

Collateral and DIP Financing Order and the interim budget attached thereto (the "Budget").  The

provisions of the Cash Collateral and DIP Financing Order have been negotiated at arms' length

and in good faith and are fair and reasonable under the circumstances and in the best interests of

creditors.

### III.     RELIEF REQUESTED

20.     By this Motion, the Debtor seeks entry of interim and final Cash Collateral and

DIP Financing Orders authorizing the Debtor (i) to use cash collateral and to borrow and

additional amount of up to $2 million on a revolving basis to the extent necessary to operate the

Debtor's business as a going concern and thereby maintain and preserve the Debtor's assets, and

(ii) to provide adequate protection to the JPMC, the Debtor's secured lender.  The Debtor and

JPMC have negotiated the terms of the Cash Collateral and DIP Financing Order, which the

Debtor requests that the Court enter on an interim basis.  During the interim period, the requested

borrowing under the DIP Loan would be limited to $1.25 million.  The Debtor further requests

that the Court set a final hearing (the "Final Hearing") on the Motion pursuant to Bankruptcy

Rule 4001(c)(2) to consider the entry of a final order that is substantially in the form of the Cash

Collateral and DIP Financing Order (the "Final Order").

## IV.    BASIS FOR RELIEF

**A.    The Court Should Authorize the Debtor's Use of Cash Collateral and Approve the Requested Adequate Protection.**

21.    A debtor-in-possession has all of the rights and powers of a trustee with respect to

property of the estate, including the right to use property of the estate in compliance with § 363

of the Code.  *See* 11 U.S.C. § 1107(a).  A debtor-in-possession may use cash collateral, pursuant

to 11 U.S.C. § 363(c) & (e), if all persons holding an interest in that cash collateral either consent

to such use or are "adequately protected."

22.    Section 363 of the Code defines cash collateral to include cash, bank accounts,

and proceeds from accounts receivables subject to a security interest.  In the present case, the

Debtor possesses cash collateral in the form of accounts receivable and inventory.  The Debtor

needs to use cash collateral to pay its operating and bankruptcy administrative expenses.  These

expenses include, without limitation, payroll, employee-related expenses, inventory,

maintenance and shipping costs, supplies, lease expenses, taxes, and insurance.  Without the

ability to use cash collateral, the Debtor has insufficient funds with which to pay such expenses.

If such expenses are not paid the Debtor will be unable to continue its business operations and

the value of the Debtor's assets will decline substantially.  The Debtor must maintain the value

of its business as a going concern in order to preserve and maximize its value to complete the

Case 14-32138    Doc 14    Filed 09/03/14    Entered 09/03/14 20:03:39    Desc Main
Document    Page 11 of 23


proposed sale of substantially all of the Debtor's assets.  This, in turn, will benefit all creditors and parties in interest.

23.    Pursuant to § 363(c)(2), the Court may authorize the Debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected.  The Code does not define "adequate protection," but § 361 does contain a non-exhaustive list of acceptable forms of adequate protection, including cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property."  11 U.S.C. § 361.

24.    Courts determine adequate protection for purposes of the Code "on a case-by-case basis."  *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994).  The purpose of adequate protection "is to ensure that the creditor receives the value for which he bargained prebankruptcy."  *Id.* (quoting *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest.").

25.    In the instant case, pursuant to 11 U.S.C. §§ 361 and 363(e) and as set forth in the attached proposed Cash Collateral and DIP Financing Order, the Debtor requests authority to provide certain adequate protection to JPMC on account of its pre-petition lien on and security interests in the Cash Collateral (the "Replacement Liens").  The Replacement Liens will attach to all existing and hereafter acquired assets of the Debtor (excluding the Debtor's claims and causes of action arising under Chapter 5 of the Code) (the "Post-petition Collateral"), in the same priority as JPMC's pre-petition liens.  The

Replacement Liens granted to JPMC will provide adequate protection for its interest in the Pre-Petition Collateral and secure payment of the Pre-Petition Indebtedness.

26.     Section 361 of the Code expressly provides that adequate protection may be provided by granting such replacement liens in post-petition assets to protect the secured creditor from diminution of its collateral during the bankruptcy proceeding.  Courts have utilized that provision of section 361 in fashioning adequate protection and permitting a debtor to use cash collateral under similar circumstances. *See, e.g.*, *In re Prichard Plaza Associates L.P.*, 84 B.R. 289, 302 (Bankr. D. Mass. 1988) ("If the proceeds stream is likely to remain stable through the collection of new accounts receivable or the sale of new inventory, adequate protection is often ensured by a replacement lien on post-petition accounts and inventory and their proceeds and by some provision for monitoring the use of proceeds."); *see also In re Airport Inn Associates, Ltd.*, 132 B.R. 951, 960 (Bankr. D. Col. 1990) ("The court could order a lien in post-petition accounts receivable as adequate protection if that relief was requested . . . ."); *In re Inter'l Design & Display Group, Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (court authorized debtor to use cash collateral and, as adequate protection, granted secured creditor replacement lien on all post-petition accounts receivable, inventory, and contracts to the extent the creditor's collateral was depleted).

27.     The terms of the Cash Collateral and DIP Financing Order require the Debtor to make monthly payments of accrued interest to JPMC at the contract rate.

28.     For the foregoing reasons, and based on the evidence the Debtor will present at the hearing, the proposed adequate protection is fair and reasonable and satisfies the requirements of § 363(c)(2) of the Code.

**B.     The Court Should Authorize the Debtor's Proposed Post-Petition Financing.**

29.     The Debtor's business routinely experiences timing lags between its needs for cash to pay ordinary operating expenses in a timely fashion and the collection of accounts receivable.  The Debtor requires a cash cushion to absorb such short term cash needs.

30.     According to the cash flow budget prepared by the Debtor's financial advisor, Silverman Consulting, the Debtor requires additional financing of approximately $1,250,000 during the first two weeks of this case in order to meet its ongoing operating expenses.  These cash needs are projected to decline thereafter but will spike again later in the forecast period, as shown in the cash flow budget.

31.     The Debtor is unable to procure adequate post-petition financing in the form of unsecured credit or unsecured debt with an administrative priority.  The circumstances of this case require the Debtor to obtain financing under § 364(c) of the Code.

32.     After determining that post-petition financing was available only under § 364(c) of the Code, the Debtor negotiated with JPMC to obtain a Debtor in Possession Loan ("DIP Loan") of up to $2 million that it will be able to draw upon to meet short term cash needs.  The DIP Loan will be repaid when the Debtor collects additional receivables and can be drawn upon again thereafter if needed pursuant to the terms of the DIP Loan.  The DIP Loan will be secured by the same types of collateral that currently secure the Pre-Petition Indebtedness and will be subject to availability based on a borrowing base and pursuant to the Budget.

33.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under § 364(c) of the Code.  Specifically, courts look to whether:

      a.     the debtor is unable to obtain unsecured credit under § 364(b), i.e., by allowing a lender only an administrative claim;

      b.     the credit transaction is necessary to preserve the assets of the estate; and

       c.       the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor and proposed lender.

*See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (S.D.N.Y. 1990).

34.      The Debtor, in its business judgment, believes that the DIP Loan is necessary to preserve the assets of the estate, that unsecured credit is not available to it given its circumstances, and that the terms of the DIP Loan are fair, reasonable, and adequate, given the circumstances of the Debtor and JPMC.  The Debtor's business judgment should be accorded deference so long as it does not run afoul of the provisions of and policies underlying the Code. *See, e.g.*, *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (approving debtor-in-possession financing necessary to sustain seasonal business); *In re Ames Dep't Stores, Inc.*, 115 B.R. at 40 ("The cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

35.      Given JPMC's pre-petition secured status, with a senior lien on substantially all of the Debtor's assets, the high variability in the Debtor's cash flow, and the exigent nature of the requested DIP Loan, alternative credit on more favorable terms was unavailable to the Debtor.

36.      The credit transaction is necessary to preserve the assets of the estate.  Indeed, the Debtor and its estate will suffer immediate and irreparable harm unless the Debtor is immediately authorized to borrow necessary additional amounts up to $1,250,000 under the DIP Loan on an interim basis pursuant to the terms and conditions set forth in the proposed Cash Collateral and DIP Financing Order.

37.     As part of the entry of the final Cash Collateral and DIP Financing Order, the
Debtor will be seeking authority to borrow up to $2 million under the DIP Loan pursuant to the
terms and conditions in the proposed Cash Collateral and DIP Financing Order.

38.     Since JPMC is not receiving any new types of collateral, and the DIP Loan is not
priming any existing pre-petition secured creditors, creditors are not being prejudiced by the DIP
Loan.

39.     The terms of the DIP Loan are fair and reasonable.   If the DIP Loan is not
approved, the Debtor's business will be harmed and the value of it is likely to be diminished to
the detriment of all creditors.

**C.     The Court Should Approve Interim Relief.**

40.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash
collateral may not be commenced earlier than 14 days after the service of such motion.  Fed.
R. Bankr. P. 4001(b).   Upon request, however, this Court is empowered to conduct a
preliminary expedited hearing on this Motion and authorize the use of Cash Collateral,
pending a final hearing, to the extent necessary to avoid immediate and irreparable harm to
the Debtor's estate.  *Id.*

41.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that this Court
conduct an emergency preliminary hearing on this Motion and (a) authorize the Debtor to
use the Cash Collateral and borrow on an interim basis up to $1,250,000 under the DIP Loan
in order to (i) maintain and preserve its property and the estate, (ii) maintain and finance its
business operations and this Case, (iii) preserve the Debtor's going concern value, and (iv)
avoid immediate and irreparable harm and prejudice to the Debtor's estate and to all parties
in interest; and (b) schedule a Final Hearing on the relief requested herein.

**D.      The Court's Order Should Be Effective Immediately.**

42.      Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition." Fed. R. Bankr. P. 6003(b).  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  For all the reasons set forth herein, the Debtor will suffer immediate and irreparable harm absent the Court's entry of an order granting the relief requested herein.  Consequently, the relief requested herein is consistent with Bankruptcy Rule 6003.  Accordingly, the order granting the relief requested herein should become effective and enforceable immediately notwithstanding Bankruptcy Rule 6004(h).

## V.      NOTICE

43.      Notice of the filing of this Motion and the hearing scheduled therefor has been provided by email, facsimile transmission or ECF, as indicated in the attached certificate of service, to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the U.S. Attorney for the Northern District of Illinois; (c) counsel to JPMC; (d) the Debtor's 20 largest unsecured creditors pursuant to Bankruptcy Rule 1007(d), including the U.S. Customs and Border Protection; (e) the Internal Revenue Service and any other federal government agency entitled to notice; (f) the Illinois Department of Revenue and any other state government agency entitled to notice; (g) the landlords of the Debtor; and (h) all other parties who have requested notice and service of pleadings.  The Debtor submits that adequate notice and opportunity for a hearing has been given for the approval of the Cash Collateral and DIP

Financing Order on a limited basis, pursuant to the provisions of § 363 of the Code, Bankruptcy

Rules 4001 and 9014, and any other applicable law, and no further notice relating to the entry of

the Cash Collateral and DIP Financing Order is necessary or required.

44.    The Debtor further requests that the Court schedule the Final Hearing and

authorize it to serve a copy of the signed Cash Collateral and DIP Financing Order, which fixes

the time and date for the filing of objections, and attaches a copy of the proposed Final Order, by

first-class mail upon: (a) the Office of the United States Trustee for the Northern District of

Illinois; (b) counsel to JPMC; (c) the Debtor's 20 largest unsecured creditors pursuant to

Bankruptcy Rule 1007(d); (d) all other parties who have requested notice and service of

pleadings.

## VI.    CONCLUSION

45.    The Debtor requires immediate use of the cash collateral and the authority to

borrow on an interim basis up to $1,250,000 under the DIP Loan to pay present operating

expenses, including payroll, and to pay vendors and other professionals to ensure a continued

supply of goods essential to the Debtor's continued viability.  Thus, the use of cash collateral and

the interim borrowing under the DIP Loan is necessary to avoid immediate and irreparable

damage to the Debtor's estate.  The value of JPMC's collateral will be adequately protected by

the Replacement Liens.

WHEREFORE, LDR Industries, LLC respectfully requests that this Court enter interim

and final orders: (i) granting this Motion; (ii) authorizing the Debtor's use of cash collateral

and borrowing of up to $1,250,000 on an interim basis under the DIP Loan upon the terms and

conditions described herein in order to avoid immediate and irreparable harm to Debtor pending

a Final Hearing on this Motion; and (iii) authorizing the provision of the Replacement Liens

consistent with the terms outlined herein.

Dated:  September 3, 2014                          Respectfully submitted:

                                                  LDR INDUSTRIES, LLC

                                                  By: ___s/ Stephen T. Bobo_____
                                                  One of its proposed attorneys

Stephen T. Bobo (IL Bar No. 6182054)
Aaron B. Chapin (IL Bar No. 6292540)
**REED SMITH LLP**
10 S. Wacker Drive, 40th Floor
Chicago, IL  60606
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400
sbobo@reedsmith.com
achapin@reedsmith.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| LDR INDUSTRIES, LLC, | Case No. 14-32138 |
| Debtor. | Honorable Pamela S. Hollis |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, does hereby certify that on September 3, 2014, I caused a copy of the foregoing NOTICE OF EMERGENCY MOTION and EMERGENCY MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO (1) OBTAIN POST-PETITION FINANCING, (2) USE CASH COLLATERAL AND OTHER COLLATERAL AND (3) PROVIDE ADEQUATE PROTECTION, PURSUANT TO SECTIONS 361, 363 AND 364 OF THE BANKRUPTCY CODE to be filed in the above-captioned proceeding.  Notice of this filing was sent to the parties on the attached service list via the method indicated.

_____/s/Aaron B. Chapin_____
Aaron B. Chapin

## SERVICE LIST

| Service Party: | Method of Service: |
|---|---|
| Patrick S Layng<br>Office of the U.S. Trustee, Region 11<br>219 S Dearborn St, Room 873<br>Chicago, IL 60604 | via ECF |
| Zachary T. Fardon<br>United States Attorney's Office<br>Northern District of Illinois, Eastern Division<br>219 S. Dearborn St., 5th Floor<br>Chicago, IL 60604 | via messenger |
| JP Morgan Case Bank, N.A.<br>c/o David Warfield<br>David A. Warfield<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, Missouri 63101<br>dwarfield@thompsoncoburn.com | via E-mail |
| INTERNAL REVENUE SERVICE<br>Mail Stop 5010 CHI<br>230 S. Dearborn Street<br>Chicago, IL 60604 | via messenger |
| INTERNAL REVENUE SERVICE<br>Associate Area Counsel, SB/SE<br>200 W. Adams Street<br>Suite 2300<br>Chicago, IL 60606 | via messenger |
| ILLINOIS DEPARTMENT OF REVENUE<br>BK Unit Level 7-425<br>100 Randolph St<br>Chicago, IL 60601 | via messenger |

| | |
|---|---|
| ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY<br>Bankruptcy Section<br>401 S State St, 4th Floor<br>Chicago, IL 60605 | via messenger |
| 600 N. KILBOURN LLC<br>600 N. Kilbourn<br>CHICAGO, IL 60624<br>Fax: 773-265-3011 | via facsimile |
| RLD Investments LLC<br>600 N. Kilbourn<br>Chicago, IL 60624<br>Fax: 773-265-3011 | via facsimile |
| U.S. Customs<br>c/o Scott Falk, Chief Counsel,<br>U.S. Customs and Border Protection<br>1331 Pennsylvania Avenue, NW,<br>Washington, DC 20229<br>Fax: 202-344-2590<br>e-mail: scott.falk@cbp.dhs.gov | via facsimile |
| U.S. Customs<br>Steven J. Holtkamp<br>Office of Associate Chief Counsel<br>U.S. Customs and Border Protection<br>Fax: 312-353-9206<br>e-mail: steven.holtkamp@dhs.gov | via facsimile |
| E-Z Weld Inc<br>1662 Old Dixie Hwy<br>Riviera Beach, FL 33404<br>Fax: (561) 848-8958 | via facsimile |
| Flexible Staffing<br>135 N 19th Ave<br>Melrose Park, IL 60160<br>Fax: 847-960-1241 | via facsimile |
| Central States<br>477 Thomas Drive<br>Bensenville, IL 60107<br>Fax: 630-595-9540 | via facsimile |

| | |
|---|---|
| William H. Harvey Company<br>4334 S. 67th St<br>Omaha, NE 68117<br>Fax 800-321-9535 | via facsimile |
| Zoeller Company<br>3649 Cane Run Rd<br>Louisville, KY 40211<br>Fax: +1-502-774-3624 | via facsimile |
| Genova Products<br>7304 East Court Street<br>Davison, MI 48423<br>FAX: (810) 744-1653<br>genova@genovaee.com | via e-mail |
| Tri State Logistics<br>15862 Painter Rd<br>Defiance, OH 43512<br>phone: 419-395-2245 | via phone |
| Winvest<br>Building A12<br>D Area,  Democratic Village<br>Western Industrial Zone Shajing Town 0<br>China<br>yvonnegao2012@126.com | via e-mail |
| Hq<br>Jinmahe Branch Xuzhuo<br>Economic & Techincal Development Zone<br>Xuzhuo Jianjsu China<br>huanqiu@xzhuanqiu.com | via e-mail |
| Sizen<br>No. 2189 Panchuan Road<br>Baoshan Shanghai  China<br>sales@shwhitford.com | via e-mail |
| Pannext<br>Langfang Pannext Pipe Fitting<br>236 West Guangming Road Langfang<br>Hebei China<br>myuan@pannext.com | via e-mail |

| | |
|---|---|
| Zhejiang Minmetals Sanhe I/E Co. Ltd. 310 North Zhong Shan Road<br>Rm 1014  Hangzhou China 310003<br>leway@189.cn | via e-mail |
| Xiamen Runner<br>302-308 Siming Park Tong'an<br>Industrial Concentration District Xiamen China<br>judy.wu@runner-corp.com.cn | via e-mail |
| Wellmade<br>6th Group Ji Ma Di Village<br>Bo Luo County<br>Hui Zhou City Guang Dong Province 0 China<br>office@stormshower.com | via e-mail |
| Ningbo Runner<br>Lingang Industrial Park<br>Xizhou Town<br>Xiangshan Ningbo Zhejiang 0<br>China<br>wilson.deng@ningborunner.com | via e-mail |
| Jianglin<br>Packaging Industrial Zone,<br>Yuhuan, Zhejiang, China<br>parts@cnjianglin.com | via e-mail |
| Sannuotop<br>Dunao Village,Yunlong Town,Yingzhou District,Ningbo City, Zhejiang, China<br>sam_sannuotop@yahoo.com | via e-mail |
| Gy<br>Yang Metal Co., Ltd. Ningbo States Jinshan Road, Zhejiang Province,<br>35 New Industrial Park<br>Ninghai County, Ningbo City, China<br>susan@diorglobal.com | via e-mail |